1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

STEPHEN J. DONELL, Permanent
Receiver for Learn Waterhouse, Inc.,
its subsidiaries and affiliates,

                                        Plaintiff,

        v.

RANDY TEINERT, et al.,

                                        Defendants.

CASE NO: 10-CV-1444 W (CAB)

**ORDER DENYING
DEFENDANTS' MOTION TO
DISMISS [DOC. 7]**

        On July 12, 2010, Plaintiff Stephen J. Donell, Permanent Receiver for Learn Waterhouse, Inc., its subsidiaries and affiliates, ("Receiver") filed this lawsuit against Defendants Randy Teinert and Cathy Teinert.  On November 29, 2010, Defendants moved to dismiss.  The Receiver opposes.

        The Court decides the matter on the papers submitted and without oral.  Civ. L.R. 7.1(d)(1).  For the following reasons, the Court **DENIES** Defendants' motion to dismiss.  (Doc. 7.)

## I.      BACKGROUND

### A.      Overview of the Underlying Fraud

Learn Waterhouse, Inc. ("LWI") was a purported investment company created by Randall T. Treadwell. (*Compl.* ¶ 1 [Doc. 1].)  From February 2001 to October 2004, Treadwell and others raised over $82 million from over 1,900 investors nationwide by selling unregistered securities in the form of nine-month promissory notes through friends, family, and the internet.  (*See MSJ Order* 2:17–20.[1])

LWI principals told investors that proceeds from the sale of the notes were pooled and that it engaged in "buy/sell" transactions in a bank-trading program that yielded alleged returns ranging from 5% to 50% per month, and 500% in just 60 days.  (*See MSJ Order* 2:20–23.)  The principals further represented that investors' funds were secured by a "pre-funded, cash-back instrument" issued by a top U.S. bank, which purportedly restricted LWI's program to risk-free transactions.  (*Id.* at 2:23–26.)  However, these representations were false.

### B.      The SEC's Lawsuit and the Criminal Case

On October 12, 2004, after an extensive investigation by federal authorities, the SEC filed a lawsuit against LWI, Treadwell, Rick D. Sluder, Larry C. Saturday, and Arnulfo M. Acosta for violating federal securities laws ("SEC Action").  (*Compl.* ¶ 16.) The complaint charged the defendants with unlawfully engaging in the offer and sale of unregistered securities, and committing fraud in the purchase, offer and sale of securities.  (*Id.* ¶ 17.)

On the same day the SEC Action was filed, this Court granted the SEC's motion for a temporary restraining order and asset freeze against LWI and the defendants, and appointed a temporary receiver for LWI.  (*See MSJ Order* 3:17–19.)  Then on November

---

[1] All references to the "MSJ Order" refer to this Court's Order granting the SEC's Summary Adjudication Motion in the SEC Action, Case No. 04-CV-2037.  The MSJ Order is Docket No. 542 in the SEC Action.

1, 2004, this Court granted the SEC's preliminary-injunction motion, and issued orders freezing assets and permanently appointing a receiver.  (*Compl.* ¶ 19.)

On September 8, 2005, Treadwell, Sluder, Saturday, and Acosta were indicted for conspiracy under 18 U.S.C. § 371, and wire fraud under 18 U.S.C. § 981(a)(1) and 28 U.S.C. § 2461(c).  (*Compl.* ¶ 20.)  As a result of the indictment, on September 21, 2005, Treadwell filed a motion to stay the SEC Action pending the conclusion of the criminal case.  (*Id.* ¶ 21.)  In arguing for the stay, Treadwell acknowledged that the charges in the criminal case were "mirror images of the [SEC]'s . . . civil allegations." (*See MSJ Order* 3:25–27.)  The indictment charged, among other things, that Treadwell and his co-conspirators intentionally concealed from investors that new investor funds would be used to pay back earlier investors.  (*Compl.* ¶ 24.)

On May 10, 2007, Acosta pled guilty to conspiracy to commit wire fraud, and making a false statement to the FBI.  (*MSJ Order* 4:8–9.)  Then on July 17, 2008, Saturday, Sluder, and Treadwell were found guilty of conspiracy and wire fraud.  (*Id.* at 4:9–11.)  After the defendants were sentenced in the criminal case, this Court lifted the stay in the SEC Action and, on March 20, 2009, granted the SEC's summary-judgment motion.  (*Compl.* ¶ 28.)

C.    **Operation of LWI and Defendants**

The defendants in the criminal case recruited their early investors to act as LWI sales agents.  (*Compl.* ¶ 30.)  The sales agents solicited other investors in return for commissions and referral fees, in addition to the returns on their own investments.  (*Id.* ¶ 31.)  Participants who invested in the early stages of LWI often received substantial disbursements as ostensible returns on their investments.  (*Id.* ¶ 32.)  But LWI was a Ponzi scheme, in which almost none of the participants' funds were actually put into any legitimate investments.  (*Id.* ¶ 34.)  Instead, any amounts paid to participants and sales agents were obtained from later investors' funds.  (*Id.*)

Defendants received payments from LWI and/or related entities totaling $1,923,800.00. (*Compl.* ¶ 41.)  These funds were derived from the Ponzi scheme and were allegedly well in excess of the amount Defendants invested in LWI.[2]  (*Compl.* ¶ 37.)

On June 2, 2010, Mr. Teinert filed an action in the District of Minnesota against his former attorneys, several United States Attorneys, and the Receiver's counsel. (*Compl., Ex. A.*)  He asserted two causes of action: breach of attorney-client privilege against, among others, the Receiver's counsel; and selective prosecution against the United States Attorneys.  (*Id.*)  The Receiver was not named as a party in this action. (*Id.*)

On July 12, 2010, the Receiver filed this lawsuit against Defendants claiming relief for Avoidance and Recovery of Fraudulent Transfers under California Civil Code §§ 3439.04(a)(1), 3439.04(a)(2) and 3439.05.  On November 29, 2010, Defendants moved to dismiss the complaint.  (Doc. 7.)  The Receiver opposes.

## II.   STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  See N. Star Int'l v. Ariz. Corp. Comm'n., 720 F.2d 578, 581 (9th Cir. 1983).  All material allegations in the complaint, "even if doubtful in fact," are assumed to be true.  Id.  The court must assume the truth of all factual allegations and must "construe them in light most favorable to the nonmoving party." Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002); see also Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996).

---

[2] The Complaint did not indicate the amount that Defendants invested into LWI. Therefore, it is unclear exactly how much of the $1,923,800.00 paid to Defendants was in excess of their principal investment.

As the Supreme Court has explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 1964-65. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, courts may consider documents specifically identified in the complaint whose authenticity is not questioned by parties. Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on other grounds). Moreover, courts may consider the full text of those documents, even when the complaint quotes only selected portions. Id. The court may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

## III.   DISCUSSION

### A.   Defendants Were Properly Served with the Summons and Complaint.

The Federal Rules of Civil Procedure provide that an individual within a judicial district of the United States may be served by "following state law for serving a summons in an action brought in . . . the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Because this Court is located in California, the Receiver is permitted to serve the summons and complaint according to California law. Under the California Code of Civil Procedure, a person may be served by sending a copy of the summons and complaint by first-class mail. Cal. Civ. Proc. Code § 415.40.

1    Here, the Receiver served Defendants by certified mail.  (*Summons* [Doc. 5].)
2    Defendants do not contest this fact.  (*Mot. to Dismiss* 3:15 [Doc. 7].)  Therefore, service
3    was proper.  <u>See</u> Cal. Civ. Proc. § 415.40.

4

5    **B.    <u>The Receiver's Claims Are Not Compulsory Counterclaims to the</u>**
6    **<u>Minnesota Action.</u>**

7    "A counterclaim is a claim for affirmative relief asserted by a party (generally the
8    defendant) against an opposing party (i.e., plaintiff)." <u>Chua v. Am.'s Wholesale Lender</u>,
9    No. 09cv105-L(WVG), 2010 WL 5288151, at *1 n.1 (S.D. Cal. Dec. 17, 2010) (Lorenz,
10   J.) (citation and internal quotation marks omitted).  A compulsory counterclaim is one
11   that "arises out of the transaction or occurrence that is the subject matter of the
12   opposing party's claims." Fed. R. Civ. P. 13(a)(1)(A).  The Ninth Circuit applies the
13   "logical relationship test" to determine whether a counterclaim is compulsory.  <u>Pochio</u>
14   <u>v. Prudential Ins. Co.</u>, 827 F.2d 1246, 1249 (9th Cir. 1987).  Applying the logical
15   relationship test, the court must examine "whether the essential facts of the various
16   claims are so logically connected that considerations of judicial economy and fairness
17   dictate that all the issues be resolved in one lawsuit." <u>Id.</u>

18   Here, Defendants argue that the Receiver's claims must have been raised as
19   compulsory counterclaims in the Minnesota action.  (*Mot. to Dismiss* 5:1–5.)  However,
20   the Receiver was not a party to that action.  Thus, he did could not have raised his
21   claims in that action.

22   Furthermore, Defendants claimed breach of attorney-client privilege and selective
23   prosecution in the Minnesota action.  (*Id.*, *Ex.* A.)  The essential facts alleged pertaining
24   to the former include illegally obtained information, and to the latter include various
25   U.S. Attorneys engaging in "the practice of 'setting people up' via a civil action and
26   thereby gathering enough 'evidence to take the case before a federal grand jury.'" (*Id.*,
27   *Ex.* A ¶¶ 30, 35.)  The essential facts of these claims are not essential to the Receiver's
28   claims for fraudulent transfers paid to Defendants in this lawsuit.  The claims in this case

involve transfers made to Defendants from a Ponzi scheme with the actual intent to hinder, delay or defraud its creditors.  Thus, the claims are not so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.

Accordingly, the Receiver's claims not compulsory counterclaims to the Minnesota action.

### C.    Defendants Fail to Demonstrate that the Receiver's Claims are Time Barred.

Defendants contend that the "statute of limitations has long since expired for any claims pursuant to any action that could have been brought under 28 U.S.C. § 1367." (*Mot. to Dismiss* 6:1–2.)  To support this contention, Defendants only state that "[t]his should be self-evident."  (*Id.* at 6:3.)  However, it is not.  Defendants fail to cite any law or identify any facts to support their contention that the claims are time barred.

Accordingly, the Court rejects Defendants' argument.

### D.    This Court Has Jurisdiction Over the Receiver's Claims.

Defendants also contend that the "other jurisdictional statutes invoked by the Receiver, for the most part, do not apply."  (*Mot. to Dismiss* 6:4–5.)  Specifically, Defendants argue that this Court lacks jurisdiction because they live in Minnesota.  (*Id.* at 7:4–5.)  The Court disagrees.

Federal securities laws create exclusive federal jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created by" federal securities laws.  15 U.S.C. §§ 77v(a), 78aa.  The exercise of ancillary jurisdiction is appropriate "over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgements—including attachment, mandamus, garnishment, and the pre-judgment avoidance of fraudulent conveyances."  Peacock v. Thomas, 516 U.S. 349, 356 (1996).  In this case, this Court has supplemental

1 jurisdiction over the Receiver's claims because the claims are ancillary to the SEC

2 Action and the Receivership is pending before this Court.  See Donell v. Kowell, 533

3 F.3d 762, 769 (9th Cir. 2008) ("Although the Receiver only filed suit under a California

4 statute, we have subject matter jurisdiction because this proceeding is ancillary to the

5 SEC enforcement action.").

6

7  **E.   A More Definite Statement Is Not Appropriate.**

8      "A party may move for a more definite statement of a pleading to which a

9 responsive pleading is allowed but which is so vague or ambiguous that the party cannot

10 reasonably prepare a response."  Fed. R. Civ. P. 12(e); see Bureerong v. Uvawas, 922 F.

11 Supp. 1450, 1461 (C.D. Cal. 1996) ("[A] motion for a more definite statement should

12 not be granted unless the defendant literally cannot frame a responsive pleading.").  "A

13 motion for a more definite statement is used to provide a remedy for an unintelligible

14 pleading rather than a correction for lack of detail."  N. Cnty. Commc'ns Corp. v. Sprint

15 Commc'ns Co., L.P., No. 09-cv-02685 BEN (WMc), 2010 WL 1499289, at *1 (S.D.

16 Cal. Apr. 12, 2010) (Benitez, J.).  Furthermore, the motion may be denied where the

17 detail sought is obtainable through discovery.  C.B. v. Sonora Sch. Dist., 691 F. Supp.

18 2d 1170, 1190-91 (E.D. Cal. 2010).  Motions for a more definite statement are generally

19 viewed with disfavor and are rarely granted.  Cellars v. Pac. Coast Packaging, Inc., 189

20 F.R.D. 575, 578 (N.D. Cal. 1999).

21      Here, Defendants argue that the complaint is deficient because "there is not a

22 word about what the Defendants did to violate the securities laws" and "the allegation

23 is so vague that a more definite statement is in order."  (*Mot. to Dismiss* 7:11–12.)

24 However, Defendants fail to realize that the Receiver is not asserting claims for

25 violations of securities laws, but rather claims for fraudulent transfers.  The Receiver

26 supports these claims with clearly identified law and factual allegations in the complaint.

27 Specifically, the Receiver's claims are based on the fact that Defendants invested in a

28 Ponzi scheme operated by LWI, and the transfers made to Defendants were made with

1    the actual intent to hinder, delay or defraud its creditors.  There is nothing vague or

2    ambiguous about these allegations.

3         Accordingly, a more definite statement is not appropriate.

4

5    **IV.   CONCLUSION & ORDER**

6         In light of the foregoing, the Court **DENIES** Defendants' motion to dismiss.

7    (Doc. 7.)

8

9         **IT IS SO ORDERED.**

10

11   DATED:  April 26, 2011

12

13                                    _____

14                                    Hon. Thomas J. Whelan
                                      United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28